## APPEAL OF STRONG, HEWAT & CO., INC.

Docket No. 5069.    Submitted December 1, 1925.    Decided March 30, 1926.

1. In the reorganization of a business, a partnership paid in to a corporation on March 1, 1918, all of its tangible and intangible assets for all of the capital stock of the corporation and for notes in the amount of $70,000. *Held,* that section 331 of the Revenue Act of 1918 prevents the corporation from valuing the assets so acquired at a greater amount, in computing invested capital, than that at which the partnership could have valued them, in computing invested capital, if they had not been so transferred.

2. Value of property acquired on March 1, 1918, for stock, determined for the purpose of deductions for exhaustion, wear and tear.

*Laurence A. Tanzer* and *J. C. Peacock, Esqs.,* for the taxpayer.
*Ellis W. Manning, Esq.,* for the Commissioner.

Before LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of deficiencies in income and profits tax for the fiscal years ending August 31, 1920 and 1921, in the amounts of $21,932.36 and $1,895.45, respectively, arising from the reduction of invested capital claimed by the taxpayer, in respect of tangible property and good will acquired from a predecessor partnership for stock and notes, by reason of the provisions of section 331 of the Revenue Act of 1918, and the reduction of the amount claimed for exhaustion, wear and tear of the property so acquired.

### FINDINGS OF FACT.

The taxpayer is a New York corporation engaged in the manufacture of woolen cloth, with principal office at New York City and mills at North Adams, Mass. It was organized on March 1, 1918, at which date it succeeded to the business theretofore carried on by a partnership of the same name, taking over its entire assets, both tangible and intangible, and issuing in exchange therefor its entire capital stock, consisting of $500,000 par value of preferred and 10,000 shares of no par value common stock, and promissory notes in the amount of $70,000 to the members of the partnership in proportion to their interest therein, and assuming the liabilities of the partnership.

The assets taken over consisted of lands, factory and tenement buildings, machinery and equipment, and good will. The predecessor partnership made a practice of charging to expense the cost of acquiring and constructing machinery, equipment, and buildings, and did not carry its plant upon its books as an asset. In opening its books on March 1, 1918, the taxpayer entered the plant thereon at $276,834, this being the figure required to balance the capital stock account of $550,000, after crediting against capital stock account and liabilities the amount of inventory, accounts receivable, and other assets, exclusive of the plant. The capital stock account of $550,000 consisted of the par value of the preferred stock and $5 a share for the no par value common stock.

In computing the invested capital in respect of the property acquired for stock and notes, the Commissioner included the same at cost to the partnership, less depreciation, and arrived at a value of approximately $200,000.

For the purpose of computing the deduction for exhaustion, wear and tear, the Commissioner determined that depreciable assets had a value of approximately $200,000.

On October 24, 1925, the taxpayer had an inventory appraisal made of its depreciable assets for the purpose of determining their value as of March 1, 1918. This appraisal was made upon the basis of the cost of reproduction, less depreciation, and showed a value of the entire property on March 1, 1918, of $340,148.77, apportioned as follows:

| | |
|---|---|
| Brick buildings | $66, 598. 15 |
| Frame buildings | 7, 257. 72 |
| Machinery and equipment | 266, 292. 90 |
| Total | $340, 148. 77 |

The earnings of the predecessor partnership for the fiscal years ending August 31, 1916 and 1917, and the six-month period ending March 1, 1918, were $108,361.45, $148,783, and $197,650, respectively.

The earnings of the taxpayer for the six-month period ending August 31, 1918, and the fiscal years ending August 31, 1919 and 1920, were $267,000, $151,000, and $295,000, respectively. The actual value on March 1, 1918, of the tangible assets acquired by the tax- payer from the predecessor partnership was $357,000, divided as follows:

| | |
|---|---|
| Land and water rights | $25, 700. 00 |
| Brick buildings | 64, 603. 50 |
| Frame buildings | 6, 957. 30 |
| Machinery and equipment | 259, 739. 20 |

### OPINION.

LITTLETON: As to the question of the application of section 331 of the Revenue Act of 1918 to the computation of this taxpayer's invested capital, in respect of the assets acquired from the predecessor partnership for stock and notes, we are of the opinion that the determination of the Commissioner that this section prevents the inclusion of the assets thus acquired in invested capital at a greater amount than the cost thereof to the predecessor, less depreciation, was correct. *Appeal of Baker, Hamilton & Pacific Co.*, 2 B. T. A. 1. No evidence was submitted showing that the value determined by the Commissioner upon this basis was incorrect. His action, therefore, in this regard is approved.

For the purpose of the deduction for exhaustion, wear and tear of the depreciable assets acquired by the taxpayer, we have deter- mined the values thereof as of March 1, 1918, from the evidence sub- mitted. At the hearing testimony was given by a broker engaged for about eight years in the purchase and sale of textile mills. This witness was thoroughly acquainted with the condition of the woolen industry in 1918 and with the market value of mills of the char- acter of that acquired by the taxpayer. He testified that in March, 1918, the woolen industry was in a prosperous condition; that mills were operating to their full capacity and allotting goods; that the demand for mills of this character exceeded the supply; and that the mill acquired by the taxpayer was well located, with a good supply of water for manufacturing processes and for auxiliary power, and compared favorably with other mills of that character. He further testified that the market price for mills of this character in March, 1918, depended principally upon their production capacity, and that this plant had 14 sets of cards and was overloomed. Using the prevailing price at that time of $25,000 a set and $500 a loom for 14 extra looms, he valued the assets acquired by the taxpayer at $357,000. The market value of woolen mills advanced subsequent to 1918.

The taxpayer made an inventory of the buildings, machinery, and equipment on hand at March 1, 1918, and valued the same on the basis of cost of reproduction, less depreciation, at $340,148.77. We can not accept this method of valuation in the absence of proof that the value thus determined was the actual value at March 1, 1918. The evidence submitted, however, shows that the inventory is correct, and it further establishes to the satisfaction of the Board that the actual value of the entire property, including the land and water rights, on March 1, 1918, was $357,000. The Commissioner valued the land and water rights at $25,700, and this the taxpayer accepts. The record does not disclose the value which the Commissioner placed upon the buildings, machinery, and equipment. By allocating $25,700 of the total value of $357,000 to land and water rights, and apportioning the remaining $331,300 to brick and frame buildings, and machinery and equipment, we arrive at the values for the various properties as set forth in the findings of fact, which should be used in computing the deduction for exhaustion, wear and tear.

*Order of redetermination will be entered on 10 days' notice, under Rule 50.*